## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | |
|---|---|
| **S.D.**<br>159 Nana Lane,<br>Fruitland, MD 21801<br>(Wicomico County) | |
| *Plaintiff,* | Civil No.: |
| v. | **JURY TRIAL REQUESTED** |
| **STEVEN V. ABREU, in his Individual and Official Capacities as a Wicomico County Deputy Sheriff**<br>Western Correctional Institution<br>DOC # 00504763<br>SID 4069930<br>13800 McMullen Highway S.W.<br>Cumberland, Maryland 21502<br>(Allegany County) | |
| *and* | |
| **STATE OF MARYLAND**<br>80 Calvert Street<br>Annapolis, MD 21401<br>(Anne Arundel County)<br>Serve On: Dereck E. Davis<br>　　　　Maryland State Treasurer<br>　　　　80 Calvert Street<br>　　　　Annapolis, MD 21401 | |
| *and* | |
| **WICOMICO COUNTY, MARYLAND**<br>Serve On: Wicomico County Executive<br>　　　　Government Office Building<br>　　　　125 North Division St., Room 301<br>　　　　Salisbury, MD 21801<br>　　　　(Wicomico County) | |
| *Defendants.* | |

1

## COMPLAINT AND JURY DEMAND

Plaintiff, S.D., by her attorneys, Thomas W. Keilty, III, Nicholas C. Bonadio, and Keilty Bonadio, LLC, hereby sue Defendants Steven V. Abreu, Wicomico County, Maryland, and State of Maryland, and, in support thereof, states as follows:

### PARTIES

1.      Plaintiff S.D. is a citizen of Maryland, domiciled in Salisbury, MD.

2.      Defendant State of Maryland (the State) employs county deputy sheriffs as state constitutional officers subject to the control of the Maryland General Assembly. Additionally, county deputy sheriffs perform certain law enforcement, security, and other functions on behalf of their respective county governments, including that of Wicomico County. As such, county deputy sheriffs perform both state and county functions and, through their actions as hybrid officers of both entities, subject both the State and their respective counties to liability.

3.      Defendant Steven V. Abreu is a citizen of Maryland, domiciled in Salisbury, MD. At all relevant times, Defendant Abreu was employed as a dual agent of the State and Wicomico County in his capacity as a sworn deputy sheriff of the Wicomico County Sheriff's Office and acting under color of state law. Mr. Abreu was involved in the events giving rise to this action, and at all relevant times performed duties and functions within the scope of his employment with the Wicomico County Sheriff's Office, and by extension the State of Maryland and Wicomico County. Plaintiff sues Mr. Abreu in his official and individual capacities.

4.      Defendant Wicomico County, Maryland (the County) is a municipal corporation organized under the provisions of Art. XI-A of the Maryland Constitution. The County is properly a defendant to this action as it has a statutory obligation under Md. Code Ann. § 9-108 of the State Finance and Procurement Article, to insure, defend, and indemnify for torts committed by any

sheriff or deputy sheriff when they purport to have performed a law enforcement function, and because the sheriff and deputy sheriffs perform functions on behalf of both the County and the State. Further, the County is liable for the actions of its sworn police officers.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C.A. § 1331 because Plaintiff brings claims under 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C.A. § 1367.

6.      Venue is proper in this Court because the acts, events, and omissions giving rise to Plaintiff's claims occurred in Wicomico County, Maryland.

## FACTS COMMON TO ALL COUNTS

7.      In 2021, the Wicomico County Sheriff's Office (WCSO), led by Sheriff Michael Lewis, interviewed Defendant Abreu for a position as deputy sheriff.

8.      Defendant Abreu applied for, but was denied, employment with WCSO at least once before being hired by Sheriff Lews, who became Abreu's supervisor.

9.      Under WCSO Policy § 319.3.2, supervisors are required to "be reasonably aware of the performance of their subordinates or to provide appropriate guidance and control" and to "promptly and fully report any known misconduct."

10.      Abreu enrolled in the required twenty-six-week law enforcement training program at the Eastern Shore Criminal Justice Academy.

11.      During training, Abreu allegedly groped a female trainee during a search exercise by using his palms instead of the back of his hands. Although reported, this incident was dismissed as a "training correction" and was not meaningfully addressed.

3

12.    After completing the course, Abreu was released to solo patrol on or about August 25, 2022.

13.    Within weeks, Defendant Abreu performed a traffic stop in which the female driver alleged that Abreu sexually assaulted her during the stop and then stalked and harassed her for weeks following the incident.

14.    On information and belief, Sheriff Lewis declined to discipline Abreu for the alleged sexual assault, but Abreu was disciplined (he was docked four days of paid leave) for turning off his body worn camera during or otherwise manipulating the body worn camera footage captured during the stop.

15.    Either way, Abreu violated state law and WSCO Policy and such violations may be punishable by termination or suspension.

16.    On information and belief, Abreu did not receive any training to correct his behavior and Sheriff Lewis returned Abreu to unsupervised solo patrol duty.

17.    Not long after, Abreu again violated state law and WSCO policy by allowing a civilian to drive his marked patrol vehicle, with lights and sirens activated, in a known high-crime area.

18.    While Abreu apparently lost additional days of paid leave, Sheriff Lewis again failed to provide corrective training or meaningful oversight to Abreu during patrol.

**September 25, 2022 Incident**

19.    Defendant Abreu responded to a domestic complaint at Plaintiff's residence.

20.    Upon arrival, the officers separated Plaintiff from her ex-husband. Defendant Abreu remained in the living room with Plaintiff.

21.     While alone, Defendant Abreu handed Plaintiff a small piece of paper with a telephone number: "240-844-2409," and instructed her to call him.

22.     Plaintiff reasonably believed that Abreu was showing compassion and, after officers left Plaintiff's residence, Plaintiff sent a thank-you text to the number Abreu provided.

23.     Just a few minutes later, Abreu returned to Plaintiff's home unannounced. After Plaintiff's mother answered the door, Plaintiff came out and met Abreu on the porch.

24.     Abreu provided Plaintiff with an informational pamphlet on protective orders.

25.     Then, without warning or hesitation, Abreu lifted Plaintiff's shirt, exposing a tattoo on her abdomen. Abreu groped Plaintiff and lifted her shirt further, stating he wanted to see Plaintiff's other tattoos.

26.     Defendant then Abreu forcibly pulled Plaintiff toward him and kissed her lips and neck without consent, and forced his hand up her shorts and digitally raped her.

27.     Before Plaintiff could react, Defendant Abreu received a call from dispatch and left but stated his intention to return.

28.     Plaintiff, shaken and tearful, blocked the phone number provided by Defendant Abreu. But then, after becoming fearful that Abreu, a deputy sheriff, would retaliate against Plaintiff or her minor daughter, unblocked the phone number.

29.     At 10:54 p.m., Defendant Abreu texted Plaintiff requesting to return to her residence around 1:00 a.m.; Plaintiff declined.

30.     On September 26th, Defendant Abreu texted Plaintiff, indicating he was nearby. Plaintiff ignored the message, but Abreu arrived shortly thereafter, uninvited.

31.      Plaintiff's mother answered the door and Plaintiff met Defendant Abreu on the front porch.

32.     Defendant Abreu informed Plaintiff he had been monitoring the police database for adverse actions against her.

33.     Such conduct violated WCSO Policy §319.5.6, which prohibits "using agency records, computer systems, or databases for personal interest, gain, or purpose not related to official law enforcement duties," violation of which is grounds for termination and referral for criminal charges.

34.     Defendant Abreu requested to enter Plaintiff's residence, and she consented. After brief discussion, Plaintiff left the room to check on her minor daughter. Defendant Abreu followed Plaintiff to her bedroom and sat on the bed uninvited until dispatched to another location.

35.     Before leaving, Defendant Abreu forcibly pulled Plaintiff onto his lap, forcibly pressed her body onto his clothed penis and kissed her neck without her consent. Plaintiff pushed Defendant Abreu away and he left, threatening he would return.

36.     These actions directly violated WCSO Policy § 319.5.4, which prohibits "maintaining inappropriate personal relationships with victims," and "unlawful exercise of authority for personal gain;" and § 319.5.1, which bars "any conduct unbecoming a member which discredits the member or agency or impairs the efficiency or operation of the agency." Violations of these policies are grounds for immediate termination and referral for criminal prosecution. *Id.*

37.     That evening, Defendant Abreu unlawfully re-entered Plaintiff's residence uninvited and unannounced, and proceeded directly to her bedroom.

38.     Defendant Abreu's unlawful entry without legal justification or excuse violated WCSO Policy §§ 318.2, 319.5.1, 319.5.4; Article 26 of the Maryland Declaration of Rights; Md. Code, Crim. Law § 6-402(a); and the Fourth Amendment of the United States Constitution.

39.    Plaintiff insisted Defendant Abreu leave. Instead, Defendant Abreu physically forced himself on Plaintiff, sexually assaulted, and digitally raped her.

40.    Plaintiff physically and verbally resisted the assault, pushed Defendant Abreu away and expressed fear and extreme discomfort. Defendant Abreu grabbed her hand and forced her to touch his erection, stating "look, you got me excited."

41.    Plaintiff persistently insisted Defendant Abreu leave and he departed at or around 8:00 p.m.

42.    At 9:43 p.m., Plaintiff received a text from Defendant Abreu indicating he wished to return. Plaintiff did not respond.

43.    That night, around 12:30 a.m., Defendant Abreu returned and knocked loudly on Plaintiff's bedroom window for several minutes. Terrified, Plaintiff remained silent and motionless in bed, holding her daughter.

44.    The following morning, Defendant Abreu texted Plaintiff that he often passes by her residence to determine whether she is alone.

45.    Over the following weeks, through at least October 9, 2022, Defendant Abreu repeatedly returned to Plaintiff's home uninvited; continuing these patterns of physical and emotional abuse. Plaintiff reasonably expressed ongoing fear, anxiety, and emotional distress throughout these events.

46.    On October 30, 2022, WCSO received a complaint that Defendant Abreu engaged in substantially similar sexual misconduct. On October 31, 2022, Defendant Abreu was terminated and criminally charged with multiple counts of false imprisonment, rape, sexual assault of persons in custody, and misconduct in office.

47.     Following Defendant Abreu's arrest, Sheriff Lewis publicly stated that Abreu presented "no red flags whatsoever." On information and belief, these incidents were known, investigated "in-house," and handled without meaningful investigation, reporting, retraining, or disciplinary action.

48.     Defendant Abreu served as a solo sheriff's deputy for less than sixty days. On information and belief, at least six more victims of Defendant Abreu's gross misconduct have been identified.

## COUNT I –
### 42 U.S.C. §1983
### (AGAINST DEFENDANT ABREU IN HIS OFFICIAL CAPACITY)

49.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

50.     At all relevant times, Plaintiff was guaranteed rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful detention, seizure, search conducted in an unreasonable manner, and the use of excessive force.

51.     At all relevant times, Defendant Abreu was acting under the color of law as a law enforcement officer with the Wicomico County Sheriff's Office.

52.     In that capacity, Abreu deprived Plaintiff of her protected security interests, under the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unreasonable seizures and sexual assault.

53.     On multiple occasions, including September 25th and 26th, Abreu executed multiple unlawful seizures of Plaintiff, including by unlawfully entering her home, physically restraining her, and sexually assaulting her.

54.    This conduct is so outrageous that it shocks the conscience, thereby depriving Plaintiff of her liberty interest under the due process clause of the Fourteenth Amendment.

55.    Abreu's actions were not related to any legal justification or law enforcement purpose.

56.    As a direct and proximate result of Defendant Abreu's repeated unlawful conduct, Plaintiff suffered extensive and ongoing injuries, including, but not limited to, physical pain, emotional distress, and mental anguish.

**WHEREFORE**, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00 together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

## COUNT II
### 42 U.S.C. §1983
### (AGAINST DEFENDANT ABREU IN HIS INDIVIDUAL CAPACITY)

57.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

58.    At all relevant times, Plaintiff was guaranteed rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unlawful detention, seizure, search conducted in an unreasonable manner, and the use of excessive force.

59.    At all relevant times, Defendant Abreu was acting under the color of law as a law enforcement officer with the Wicomico County Sheriff's Office.

60.    In that capacity, Abreu deprived Plaintiff of her protected security interests, under the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unreasonable seizures and sexual assault.

61.     On multiple occasions, including September 25th and 26th, Abreu executed multiple unlawful seizures of Plaintiff, including by unlawfully entering her home, physically restraining her, and sexually assaulting her.

62.     This conduct is so outrageous that it shocks the conscience, thereby depriving Plaintiff of her liberty interest under the due process clause of the Fourteenth Amendment.

63.     Abreu's actions were not related to any legal justification or law enforcement purpose.

64.     As a direct and proximate result of Defendant Abreu's repeated unlawful conduct, Plaintiff suffered extensive and ongoing injuries, including, but not limited to, physical pain, emotional distress, and mental anguish.

**WHEREFORE**, Plaintiff demands judgment against Defendant Abreu, in his individual capacity, in an amount in excess of $75,000.00 together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

### COUNT III -
### VIOLATION OF MARYLAND DECLARATION OF RIGHTS ARTICLE 26
### (AGAINST DEFENDANTS ABREU, WICOMICO COUNTY, AND THE STATE OF MARYLAND)

65.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

66.     Under Article 26 of the Maryland Declaration of Rights, Plaintiff has the right to be free from unreasonable seizures.

67.     Defendant Abreu, acting under color of state law, and in his capacity as a law enforcement officer with the Wicomico County Sheriff's Office, repeatedly deprived Plaintiff of this protected interest by executing unreasonable and unlawful seizures of Plaintiff, including by

unlawfully entering her home and bedroom and by physically restraining and sexually assaulting Plaintiff.

68.     Defendant Abreu's actions served no law enforcement purpose and were not in response to any provocation or threat to officer safety.

69.     As a direct and proximate result of Defendant Abreu's repeated unlawful conduct, Plaintiff suffered severe and ongoing injuries including, but not limited to, physical pain, emotional distress, and mental anguish.

70.     Defendants Wicomico County and the State of Maryland are vicariously liable for Defendant Abreu's conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

### COUNT IV -
### VIOLATION OF MARYLAND DECLARATION OF RIGHTS ARTICLE 24
### (AGAINST DEFENDANTS ABREU, WICOMICO COUNTY, AND THE STATE OF MARYLAND)

71.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

72.     Under Article 24 of the Maryland Declaration of Rights, Plaintiff has the right to be free from deprivation of her interest in bodily integrity and bodily freedom.

73.     Defendant Abreu, acting under color of state law, and in his capacity as a law enforcement officer with the Wicomico County Sheriff's Office, repeatedly deprived Plaintiff of this protected interest, including by unlawfully entering her home and bedroom and by physically restraining and sexually assaulting Plaintiff.

74.    Defendant Abreu's actions served no law enforcement purpose and were not in response to any provocation or threat to officer safety.

75.    As a direct and proximate result of Defendant Abreu's repeated unlawful conduct, Plaintiff suffered severe and ongoing injuries including, but not limited to, physical pain, emotional distress, and mental anguish.

76.    Defendants Wicomico County and the State of Maryland are vicariously liable for Defendant Abreu's conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

## COUNT V –
### 42 U.S.C. § 1983 *MONELL*
### (AGAINST DEFENDANT WICOMICO COUNTY)

77.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

78.    Wicomico County failed to properly train, supervise, and discipline Defendant Abreu against abusing his power as a law enforcement officer to, among other things, engage in sexually inappropriate behavior toward citizens.

79.    The failure to properly train, supervise, and discipline Abreu demonstrates gross disregard for the constitutional rights of the public, including Plaintiff, and was a proximate cause of Plaintiff's injuries.

80.    Abreu was accused of sexual misconduct during training and again during a traffic stop shortly after going on patrol. During and after the former incident, Abreu improperly and illegally turned off his body-worn camera and/or manipulated the relevant footage.

81.    Abreu also let a civilian drive Abreu's WCSO patrol car with its emergency lights and sirens activated.

82.    Wicomico County Sheriff Michael Lewis, at all relevant times, was Abreu's supervisor and the official with final decision-making authority regarding disciplining deputy sheriffs, like Abreu, for such conduct.

83.    Despite actual knowledge of Abreu's misconduct, Sheriff Lewis took no corrective action to stop Abreu.

84.    Among other things, Sheriff Lewis could have suspended or fired Abreu, required that Abreu undergo training about his illegal and unethical conduct to ensure that Abreu did not deprive members of the public of their rights secured by the United States Constitution and laws, or required that Abreu have a supervisor accompany him on patrol.

85.    Instead, acting with deliberate indifference to the rights of Plaintiff and the public, Lewis took no action, and his failure to enforce the laws, regulations, and rules governing Abreu's conduct as a Wicomico County Deputy Sheriff caused the aforementioned violations of Plaintiff's constitutional rights, including her right to be free from unreasonable seizures and her Due Process right to be free from intrusions on her bodily integrity and freedom of movement.

86.    Even in his short time as a Wicomico County Deputy Sheriff, Abreu's misconduct was so frequent and egregious that Sheriff Lewis' failure to take corrective action effectively adopted Abreu's conduct as a custom or practice of Wicomico County, this custom/practice was the driving force behind Abreu's violations of Plaintiff's constitutional rights, including her right to be free from unreasonable seizures and her Due Process right to be free from intrusions on her bodily integrity and freedom of movement.

87.     As a direct and proximate result of Defendant Wicomico County's unconstitutional customs, policies, and practices, Plaintiff sustained severe and permanent injuries, including physical pain, emotional suffering, and other economic and non-economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Wicomico County, in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

### COUNT VI –
**VIOLATIONS OF ARTICLE 24  26 MARYLAND DECLARATION OF RIGHTS (*LONGTIN*)**
**(AGAINST DEFENDANTS WICOMICO COUNTY AND STATE OF MARYLAND)**

88.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

89.     Under Article 24 of the Maryland Declaration of Rights, Plaintiff has the right to be free from deprivation of her interest in bodily integrity and bodily freedom.

90.     Under Article 26 of the Maryland Declaration of Rights, Plaintiff has the right to be free from unreasonable seizures.

91.     Acting with deliberate indifference to the rights of Plaintiff and the public, Wicomico County and the State of Maryland, including through Sheriff Lewis, failed to properly train, supervise, and discipline Defendant Abreu, and these failures were a proximate of Plaintiffs' injuries.

92.     Also, because of the repeated and widespread nature of Abreu's conduct, these failures established an unconstitutional pattern or practice, or unofficial policy of allowing its law enforcement officers, including Abreu, to violate the rights of members of the public guaranteed by Articles 24 and 26 of the Maryland Declaration of Rights.

93.     This policy was the driving force behind Plaintiff's constitutional injuries.

94.     As a direct and proximate result of Defendant Wicomico County's unconstitutional customs, policies, and/or practices, Plaintiff suffered severe and permanent injuries, including physical pain, emotional distress, loss of liberty, and other economic and non-economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants Wicomico County and the State of Maryland, in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

**COUNT VII –**
**ASSAULT**
**(AGAINST DEFENDANT ABREU)**

95.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

96.     At all relevant times, Defendant Abreu worked as a law enforcement officer with the Wicomico County Sheriff's Office.

97.     Defendant Abreu, without legal justification or excuse, intentionally threatened Plaintiff with the apparent immediate ability to inflict unlawful bodily harm.

98.     Defendant Abreu's conduct placed Plaintiff in reasonable apprehension of imminent physical injury. Such actions would have caused any reasonable person in Plaintiff's position to perceive danger and experience apprehension of immediate injury.

99.     As a direct and proximate result of Defendant Abreu's separate and repeated acts of assault, Plaintiff sustained severe and lasting injuries, including, but not limited to, severe physical pain, emotional suffering, and other economic and non-economic damages.

WHEREFORE, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

## COUNT VIII –
### BATTERY
### (AGAINST DEFENDANT ABREU)

100.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

101.    At all relevant times, Defendant Abreu worked as a law enforcement officer with the Wicomico County Sheriff's Office and was acting in that capacity.

102.    Defendant Abreu intentionally made harmful and offensive physical contact with Plaintiff's person without legal justification or excuse.

103.    Defendant Abreu's contacts were harmful and offensive to Plaintiff and reasonably offended her sense of personal dignity. Any reasonable person in Plaintiff's position would have perceived such contact as harmful and offensive.

104.    As a direct and proximate result of Defendant Abreu's harmful and offensive contacts, Plaintiff sustained severe and ongoing injuries, including, but not limited to, severe physical pain, emotional suffering, and other economic and non-economic damages.

WHEREFORE, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

## COUNT IX –
### FALSE IMPRISONMENT
### (AGAINST DEFENDANT ABREU)

105.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

106.    At all relevant times, Defendant Abreu worked as a law enforcement officer with the Wicomico County Sheriff's Office and was acting in that capacity.

107.    Defendant Abreu repeatedly and unlawfully restrained Plaintiff against her will, which deprived Plaintiff of liberties guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Articles 24 and 26 of the Maryland Declaration of Rights.

108.    During each occurrence, Defendant Abreu intentionally and forcibly restrained Plaintiff without legal justification, or excuse. Defendant Abreu knew, or should have known, that Plaintiff did not consent to such restraint nor voluntarily submit to his authority.

109.    As a direct and proximate result of this repeated and unlawful restraint, Plaintiff sustained severe and irreparable injuries, including severe physical pain, emotional suffering, and other economic and non-economic damages.

WHEREFORE, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

### COUNT X –
### TRESPASS
### (AGAINST DEFENDANT ABREU)

110.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

111.    At all relevant times, Defendant Abreu worked as a law enforcement officer with the Wicomico County Sheriff's Office and was acting in that capacity.

112.    Defendant Abreu intentionally intruded upon Plaintiff's property without legal justification or excuse. Defendant Abreu knew, or should have known, that Plaintiff did not consent to such entry and that his presence was an unlawful intrusion.

113.    As a direct and proximate result of Defendant Abreu's unlawful trespass, Plaintiff sustained severe and irreparable injuries, including physical and emotional suffering, and other economic and non-economic damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

### COUNT XI -
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANT ABREU)

114.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

115.    At all relevant times, Defendant Abreu worked as a law enforcement officer with the Wicomico County Sheriff's Office and was acting in that capacity.

116.    At all relevant times, Defendant Abreu's conduct was intentional, reckless, extreme, and outrageous and beyond all possible bounds of decency. Defendant Abreu knew, or should have known, that such outrageous conduct was likely to cause Plaintiff severe emotional distress.

117.    As a direct and foreseeable result of Defendant Abreu's outrageous conduct, Plaintiff suffered severe emotional distress. Plaintiff's distress is genuine and substantial, and any reasonable person in Plaintiff's position would have been similarly harmed.

118.    As a direct and proximate result of Defendant Abreu's conduct, Plaintiff sustained severe and lasting injuries, including emotional anguish, mental suffering, physical manifestations of emotional distress, and other economic and non-economic damages.

WHEREFORE, Plaintiff demands judgment against Defendant Abreu in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

## COUNT XII –
### NEGLIGENT HIRING AND RETENTION
### (AGAINST DEFENDANTS STATE OF MARYLAND AND WICOMICO COUNTY)

119.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

120.    At all relevant times, Defendants State of Maryland and Wicomico County were responsible for employing, training, supervising, and retaining competent law enforcement officers to serve and protect the public and maintain law and order.

121.    Defendants owed a duty to exercise reasonable care in the hiring, training, supervision, and retention of its law enforcement officers and other personnel who hold positions of authority and operate under the color of law.

122.    Despite this duty, Defendants failed to adopt or enforce policies, procedures, or oversight measures that would ensure only qualified, competent, and fit individuals were entrusted with law enforcement authority.

123.    Defendants knew or should have known that Defendant Abreu exhibited behaviors and tendencies demonstrating that he was unfit for law enforcement service, posed a foreseeable risk of harm to the public, and was substantially likely to continue escalating such misconduct.

124.    As a direct and proximate result of Defendants negligent hiring, supervision, and retention of Defendant Abreu, Plaintiff sustained severe injuries, including physical pain and emotional suffering, along with other economic and non-economic damages.

125.    Defendant Abreu was employed by Defendants as an agent, servant, and/or employee of State of Maryland and Wicomico County as a WCSO deputy sheriff.

126.    Defendant Abreu was unfit and incompetent to hold such a position and was a known or reasonably knowable danger to the public. Defendants, or in the exercise of ordinary care should have known, of Defendant Abreu's dangerous, predatory, and unlawful tendencies, which were, at minimum, known to Sheriff Lewis.

127.    The tortious act committed by Defendant Abreu were directly related to his role as a law enforcement official, a position that vested him with unique authority, discretion, and access to the public.

128.    On each occasion of misconduct toward Plaintiff, Defendant Abreu was on duty, patrolling alone, and acting under the color of law without meaningful supervision. Plaintiff would not have encountered Defendant Abreu absent his role as a deputy sheriff. His unchecked authority emboldened Defendant Abreu to escalate his gross misconduct described herein.

129.    Defendant Abreu's employment with WCSO provided him with official authority and unsupervised discretion that directly enabled and facilitated his misconduct against Plaintiff.

130.    As a direct and proximate result of Defendants negligent hiring, supervision, and retention of Defendant Abreu, Plaintiff sustained severe and lasting injuries, including physical pain, emotional anguish, mental suffering, physical manifestations of emotional distress, and other economic and non-economic damages.

WHEREFORE, Plaintiff demands judgment against Defendants State of Maryland and Wicomico County, jointly and severally, in an amount in excess of $75,000.00, together with compensatory damages, punitive damages, attorneys' fees, interest, costs, and any other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial.


Dated: September 10, 2025                    Respectfully submitted,


                                            */s/ Thomas Keilty*
                                            Thomas W. Keilty, III (#18992)
                                            tkeilty@kblitigation.com
                                            Keilty Bonadio, LLC
                                            3904 Boston Street Suite 403
                                            Baltimore, Maryland 21224
                                            410-469-9953

                                            */s/ Nicholas Bonadio*
                                            Nicholas C. Bonadio (# 13679)
                                            nbonadio@kblitigation.com
                                            Keilty Bonadio, LLC
                                            3904 Boston Street Suite 403
                                            Baltimore, Maryland 21224
                                            410-469-9953

                                            */s/ Marris Hoffee*
                                            Marris Hoffee (# 31733)
                                            mhoffee@kblitigation.com
                                            Keilty Bonadio, LLC
                                            3904 Boston Street Suite 403
                                            Baltimore, Maryland 21224
                                            410-469-9953

                                            *Counsel for Plaintiff*