IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

S.D.,                                    *

     *Plaintiff*,                           *

v.                                       *          **Civil Case No. 1:25-cv-2985-JMC**

Abreu, et al.
                          *

     *Defendants*.                          *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, S.D., filed the instant litigation against Defendants Steven V. Abreu, Wicomico County, and the State of Maryland on September 10, 2025. (ECF No. 1). Plaintiff asserts various state and federal constitutional violations and tort claims. *See id.* Presently pending before the Court is Defendant Wicomico County's Motion to Dismiss, or in the Alternative, to Bifurcate. (ECF No. 12); (the "Motion"). The Motion is fully briefed, and no hearing is necessary pursuant to Local Rule 105.6 (D. Md. 2025). For the reasons that follow, the Motion, construed as a motion to dismiss will be GRANTED.

## I.    BACKGROUND

The facts relevant to Defendant Wicomico County's Motion are as follows. Defendant Abreu was formerly employed as a Wicomico County Deputy Sheriff. (ECF No. 1 at 3)[1]. On September 25, 2022, Defendant Abreu responded to a domestic complaint at Plaintiff's residence. *Id.* at 4. Upon arrival, Plaintiff asserts that officers separated her from her ex-husband, but she remained in the living room with Defendant Abreu. *Id.* "While alone, Defendant Abreu

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

handed Plaintiff a small piece of paper with a telephone number: "240-844-2409," and instructed her to call him." *Id.* at 5. Plaintiff alleges that she was under the belief that Defendant Abreu was showing compassion and sent a "thank-you text" to the number he provided after officers left her residence. *Id.* "Just a few minutes later, Abreu returned to Plaintiff's home unannounced. After Plaintiff's mother answered the door, Plaintiff came out and met Abreu on the porch." *Id.* After providing Plaintiff with an informational pamphlet on protective orders, Defendant Abreu "lifted Plaintiff's shirt, exposing a tattoo on her abdomen. Abreu groped Plaintiff and lifted her shirt further, stating he wanted to see Plaintiff's other tattoos." *Id.* "Defendant then Abreu forcibly pulled Plaintiff toward him and kissed her lips and neck without consent and forced his hand up her shorts and digitally raped her." *Id.* Around 11:00 p.m., "Defendant Abreu texted Plaintiff requesting to return to her residence around 1:00 a.m.; Plaintiff declined." *Id.*

After this incident, Plaintiff asserts that Defendant Abreu came her residence uninvited on September 26, 2022, and informed her that he "had been monitoring the police database for adverse actions against her." *Id.* at 6. He "requested to enter Plaintiff's residence, and she consented. After brief discussion, Plaintiff left the room to check on her minor daughter. Defendant Abreu followed Plaintiff to her bedroom and sat on the bed uninvited until dispatched to another location." Plaintiff alleges that before he left, Defendant Abreu "forcibly pulled Plaintiff onto his lap, forcibly pressed her body onto his clothed penis and kissed her neck without her consent. Plaintiff pushed Defendant Abreu away and he left, threatening he would return." *Id.* Defendant Abreu "unlawfully re-entered Plaintiff's residence uninvited and unannounced, and proceeded directly to her bedroom" that same evening." *Id.* Again, "Defendant Abreu physically forced himself on Plaintiff, sexually assaulted, and digitally raped her." *Id.* at 7. Plaintiff alleges she "physically and verbally resisted the assault, pushed

Defendant Abreu away and expressed fear and extreme discomfort." *Id.* "Defendant Abreu grabbed her hand and forced her to touch his erection, stating 'look, you got me excited.'" Eventually, around 8:00 p.m., Plaintiff alleges that Defendant Abreu left her home. *Id.* Nearly two hours later, Plaintiff asserts that she received a text from Defendant Abreu "indicating he wished to return. Plaintiff did not respond." *Id.* "That night, around 12:30 a.m., Defendant Abreu returned and knocked loudly on Plaintiff's bedroom window for several minutes. Terrified, Plaintiff remained silent and motionless in bed, holding her daughter." *Id.*

Plaintiff alleges that the following morning, "Defendant Abreu texted Plaintiff that he often passes by her residence to determine whether she is alone." *Id.* She asserts that over the following weeks, "through at least October 9, 2022, Defendant Abreu repeatedly returned to Plaintiff's home uninvited; continuing these patterns of physical and emotional abuse." On October 31, 2022, Defendant Abreu "was terminated and criminally charged with multiple counts of false imprisonment, rape, sexual assault of persons in custody, and misconduct in office.[2]" *Id.* The public record shows that Defendant Abreu was indicted on November 28, 2022, in the Circuit Court for Wicomico County, Maryland (C-22-CR-22-000588), and he was charged with more than fifty offenses occurring from September 2, 2022, to October 29, 2022. Thereafter, he was convicted of fifty-three charges on December 6, 2024, and filed an appeal, which is currently pending.[3]

Plaintiff initiated the instant action on September 10, 2025, asserting the following counts:

---

[2] Courts may take judicial notice of matters in the public record and publicly available information on state and federal government websites. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

[3] *See* Case Detail, C-22-CR-22-000588, Maryland Judiciary Case Search, https://casesearch.courts.state.md.us/casesearch/ (click "I agree" and enter case number C-22-CR-22-000588 into the "Case Number Search").

| | |
|---|---|
| Count I: | 42 U.S.C. §1983 (Against Defendant Abreu in his Official Capacity) |
| Count II: | 42 U.S.C. §1983 against Defendant Abreu in his Individual Capacity; |
| Count III: | Violation of Maryland Declaration of Rights Article 26 against all Defendants; |
| Count IV: | Violation of Maryland Declaration of Rights Article 24 against all Defendants; |
| Count V: | 42 U.S.C. §1983 (*Monell*) against Defendant Wicomico County; |
| Count VI: | Violation of Article 24 and 26 Maryland Declaration of Rights (*Longtin*) against Defendants Wicomico County and State of Maryland; |
| Count VII: | Assault against Defendant Abreu; |
| Count VIII: | Battery against Defendant Abreu; |
| Count IX: | False Imprisonment against Defendant Abreu; |
| Count X: | Trespass against Defendant Abreu; |
| Count XI: | Intentional Infliction of Emotional Distress against Defendant Abreu; and |
| Count XII: | Negligent Hiring and Retention against Defendants State of Maryland and Wicomico County.[4] |

*See* (ECF No. 1).

Defendant Wicomico County and the State of Maryland filed motions to dismiss on November 21, 2025. (ECF Nos. 11, 12). Thereafter, on January 9, 2026, the parties stipulated to the dismissal of the State of Maryland. (ECF No. 25). Defendant Abreu filed an Answer to the Complaint on January 21, 2026. (ECF No. 34).

## II.     STANDARD OF REVIEW

### A.     Fed. R. Civ. P. 12(b)(6)

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)

---

[4] "Plaintiff concedes that the County has immunity for the negligent hiring and retention claim set forth in Count XII." Thus, the Court dismisses this claim with prejudice.

(quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

**B.    Fed. R. Civ. P. 42(b)**

Alternatively, Defendant seeks to bifurcate the claims against Defendant Abreu an the County under Fed. R. Civ. P. 42(b).  Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Notably, Rule 42(b) is disjunctive, meaning "[o]nly one of these criteria need be met to justify bifurcation." *Saxion v. Titan-C-Mfg.*, 86 F.3d 553 556 (6th Cir. 1996) (citations omitted).  Thus, courts have "broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused." *Beasley v. Kelly*, DKC-10-0049, 2010 WL 3221848, at *3 (D. Md. Aug. 13, 2010) (citing *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert.*

*denied*, 510 U.S. 915, 114 S.Ct. 305, 126 L.Ed.2d 252 (1993)).  Based on the analysis below, the Court will construe the instant Motion as a motion to dismiss.

## III.    ANALYSIS

Defendant first argues "the County is not liable under Counts I, III, IV, V, VI, and XII because Abreu was not a County employee."  (ECF No. 6).  However, Count I does not seek to impose liability upon the County and has been brought only against Defendant Abreu.[5]  (ECF No. 1 at 8).  Moreover, as noted above, Plaintiff is no longer pursuing Count XII against the County.  Therefore, the Court will not address either of these issues.  Counts III and IV assert violations of the Maryland Declaration of Rights against Defendant Wicomico County under a theory of vicarious liability.  *See* (ECF No. 1).  Counts V and VI against the County seek to impose direct liability for violations of 42 U.S.C. § 1983 and for violating Article 24 and 26 of the Maryland Declaration of Rights respectively.  (ECF No. 1 at 13-14). Thus, whether Plaintiff may maintain a claim against Defendant under Counts III, IV, V, and VI depends on whether (1) sheriffs are County employees and (2) if not, whether there exist a plausible *Monell* or *Longtin* claims even if deputy sheriffs are not county employees.

### A.    The Vicarious Liability Claims (Count III and IV) Must be Dismissed Because Defendant Abreu was Not a County Employee.

---

[5] Perhaps in an abundance of caution, Defendant notes that Count I "in substance, makes allegations to support a claim for vicarious liability against the County." (ECF No. 12-1 at 16).  However, it is settled that a plaintiff cannot maintain a 42 U.S.C. § 1983 claim against a county based solely on vicarious liability.  *Kleger v. Dorchester Cnty., Maryland*, Civil Case No: 1:24-CV-00095-JMC, 2024 WL 3555044, at *4 (D. Md. July 23, 2024) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1987)); *see also  Brooks v. St. Charles Hotel Operating, LLC.*, No. CV DLB-23-0208, 2023 WL 6244612, at *9 n.6 (D. Md. Sept. 26, 2023) ("To the extent that [plaintiff] attempts to advance a respondeat superior theory of liability against the County in his § 1983 claim, he cannot do so."); *Horn v. City of Seat Pleasant, Md*., 57 F. Supp. 2d 219, 227 (D. Md. 1999) ("A local governmental entity cannot be held liable for a violation of § 1983 based on the theory of respondeat superior. Instead, a plaintiff must allege that the local governmental entity is directly liable because of an official policy, practice or custom.").  Thus, to any extent that there exists a vicarious liability claim under Count I contrary to Plaintiff's specification that it is asserted only against Defendant Abreu, it is dismissed, and the Court will consider the *Monell* claim asserted under Count V.

Judge Rubin of this Court addressed the precise issue of whether Maryland county defendants can be liable under § 1983 and accompanying theories of vicarious liability arising from the conduct of a deputy sheriff in *J.A. v. Abreu* on August 2, 2024. *See J.A. v. Abreu*, Civil No.: 1:23-cv-02922-JRR, 2024 WL 3638023, at *3 (D. Md. Aug. 2, 2024). There, Judge Rubin dismissed vicarious liability claims against the County because there was no plausible basis within the complaint to find that Defendant Abreu was acting as a county employee. *Id.* at *4. As Judge Rubin recognized, "it is well settled that, as a general rule, county sheriffs and their deputies are officials and/or employees of the State of Maryland, rather than their county. Thus, for purposes of tort liability in Maryland, sheriffs and their deputies are generally considered State personnel." *Id.* at *3 (quoting *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 726 (D. Md. 2013) (other citations omitted)). Therefore, on the issue of vicarious liability, this Court has already disposed of the present issue. *See id.* Under *J.A.*, this Court has already determined that sheriffs are not county employees in Maryland, and more specifically, that Defendant Abreu was not a county employee.[6] *Id.* "Indeed, in actions alleging misconduct of law enforcement officers in performing their duties, this Court has repeatedly dismissed county defendants on the basis that sheriffs and deputy sheriffs are employees of the State under Maryland law." *J.A.*, 2024 WL 3638023, at *3 (collecting cases). By extension, "federal courts analyzing federal law claims against Maryland sheriffs [generally] follow [Maryland precedent] in holding that the sheriff acts as a state official when exercising law enforcement functions." *Ledergerber v. Blubaugh*, CIVIL No. JKB-20-1208, 2020 WL 7029868, *4 (D. Md. Nov. 30, 2020).

---

[6] In *J.A.*, the plaintiff's sole claim against the county was "based in vicarious liability for Defendant Abreu's assaults." *Id.* at *4. Judge Rubin reasoned "the claim does not concern local funding or benefits affecting the deputy sheriffs, or any policymaking authority Defendant Abreu may have held or exercised." *Id.* Further, the plaintiff there did "not allege that Defendant Abreu possessed, or exercised, authority to make or enforce a County policy." *Id.* Therefore, the Court dismissed the vicarious liability claim against the County in *J.A. Id.* at *6.

In *J.A.*, which, as here, considered a mix of federal and state issues, Judge Rubin noted that Maryland precedent recognizes certain narrow circumstances in which a sheriff may be treated as a county employee. *J.A.*, 2024 WL 3638023, at *3 (citing *Rucker v. Harford County*, 316 Md. 281, 289 (1989)).  Indeed, while *Rucker v. Harford County* stands for the general rule that sheriffs and deputy sheriffs are State employees as a matter of law, "[t]he *Rucker* holding did not, however, foreclose that 'for some purposes and in some contexts,' a sheriff may be treated as a county employee, such as in matters related to the local funding and benefits of sheriffs' offices." *Id.* (quoting *Rucker*, 316 Md. at 289).  Years later, the Fourth Circuit in *Dotson v. Chester* relied on *Rucker* in recognizing an exception to the general rule that sheriffs are State employees when have "final policymaking authority." *Dotson v. Chester*, 937 F.2d 920, 926 (4th Cir. 1991).  Thus, "[a]side from the *Dotson* final policymaking authority exception, 'federal courts analyzing federal law claims against Maryland sheriffs [generally] follow *Rucker* in holding that the sheriff acts as a state official when exercising law enforcement functions.'" *J.A.*, 2024 WL 3638023, at *3 (quoting *Ledergerber*, 2020 WL 7029868, *4).  Reasoning that "Plaintiff does not allege that Defendant Abreu possessed, or exercised, authority to make or enforce a County policy," the *J.A.* Court concluded that Defendant Abreu was a State employee under *Rucker* and *Dotson*.  *Id.* at *4.

Notwithstanding the *Ledergerber* rule that federal courts considering claims against Maryland sheriffs generally follow *Rucker*, Plaintiff urges the Court to conclude that at the motion to dismiss stage, there exists a plausible inference that Defendant Abreu was acting as a County employee under an non-exhaustive, four-part test set forth in *Harter v. Vernon*, and applied in the Eleventh Amendment immunity context. *See Harter v. Vernon*, 101 F.3d 334, 337

(4th Cir. 1996); *Ledergerber*, 2020 WL 7029868, *4. No such argument was before the *J.A.* Court. *See J.A.*, 2024 WL 3638023, at *3-*4.

In *Harter*, the Fourth Circuit applied a "four-part, nonexclusive test" to determine whether an employee of a government agency is a state official for the purposes of Eleventh Amendment immunity. *Harter*, 101 F.3d at 340-43. When considering such immunity, the *Harter* test is as follows: (1) "whether the state treasury will be responsible for paying any judgment that might be awarded"; (2) "whether the entity exercises a significant degree of autonomy from the state"; (3) "whether it is involved with local versus statewide concerns"; and (4) "how it is treated as a matter of state law." *Id.* at 337. Years later, in *Harried v. Maryland*, this Court applied the *Harter* test as to whether a defendant deputy was acting as a county employee in the context of an Eleventh Amendment immunity analysis. *Harried v. Maryland*, Civil Action No. TDC-24-1190, 2024 WL 4817107, at *4 (D. Md. Nov. 18, 2024). Concluding that at the motion to dismiss stage, there was a plausible argument that a defendant deputy was acting as a county employee for the purposes of immunity, the Court denied a motion to dismiss. *See id.*

The question becomes whether the *immunity* analysis in *Harried* and *Harter* is applicable in the context of *vicarious liability*. The Court finds it is not. *See Ledergerber*, 2020 WL 7029868, *4; *Harried*, 2024 WL 4817107, at *4; *Harter v. Vernon*, 101 F.3d at 337. Rather, the Court finds that its holding in *J.A.*—which considered the same operative question about the same defendant—is dispositive. *J.A.*, 2024 WL 3638023, at *4.

However, even if the Court were to find the *Harter* test applicable at this juncture, Plaintiff's argument would still fail as a matter of law. Plaintiff emphasizes that the first factor, the most important factor, is met because the County may be financially responsible for

damages. (ECF No. 24 at 11). In response, Defendant correctly points to *J.A.*, which clarified the distinction between a county's liability for the unlawful conduct of its sheriffs and "whether a county is financially responsible for coverage and defense costs based on a deputy sheriff's law enforcement related activities pursuant to Md. Code Ann., State Fin. & Proc. § 9-108." *J.A.*, 2024 WL 3638023, at *4 (citing *Barbre v. Pope*, 402 Md. 157, 181 n.18 (2007) ("[W]e have not equated provisions regarding the payment of MTCA judgments with authorizing separate tort actions.")); *see also Ledergerber*, 2020 WL 7029868, at *5 (noting that dismissal of a county defendant did not alter its § 9-108 obligations); *Kleger v. Dorchester Cnty.*, Civil Case No: 1:24-CV-00095-JMC, 2024 WL 3555044, at *5 (D. Md. July 23, 2024) (dismissing certain vicarious liability claims against a county defendant when the plaintiff "conflate[d] Dorchester County's duty to defend and indemnify its employees in a tort suit with a waiver of governmental immunity"). Therefore, this Court has already foreclosed such an argument in several instances. Regarding the remaining factors, Defendant points to overwhelming support in its Reply for why the *Harried* test fails. (ECF No. 37). First, the Sheriff's Office is created by the Maryland Constitution and not county law, making Sheriffs elected State officials; the county has no authority over the Sheriff in the performance of his law enforcement duties under *Rucker*, 316 Md. at 286-7, the County has no authority over the sheriff's appointment of upper management under Md. Code Ann., Cts. and Jud. Proc., §§ 2-309(a), 2-336(c)(1)(i); and the list continues under each factor. Like in *J.A.*, the Complaint does not allege, nor does Plaintiff argue, that Defendant Abreu had any decision-making power or policy influence. *J.A.*, 2024 WL 3638023, at *4. The Complaint similarly fails to allege facts supporting a plausible inference that the County has any authority over the sheriff in performance of his law enforcement duties. Again, Maryland precedent forecloses such an argument. *Rucker*, 316 Md. at 286-7; *see also Prince*

*George's County v. Aluisi*, 354 Md. 422, 434 (1999).  Thus, there is no basis to find that Defendant Abreu was a county employee even if the Court were to disregard the ruling in *J.A.*

Therefore, Counts III and IV are dismissed.

**B.    The *Monell* and *Longtin* Claims (Counts V and VI) Fail Because the Complaint Fails to Plead a Policy or Custom Attributable to the County.**

Count V and VI set forth *Monell* and *Longtin* claims respectively, which differ considerably from the vicarious liability claims above, and were not at issue in *J.A.*  (ECF No. 1). Through such claims, courts recognize the right to relief against certain government entities for the unconstitutional practices, customs, or patterns.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Prince George's Cnty. v. Longtin*, 419 Md. 450, 494-95, 19 A.3d 859 (Md. 2011).  Such claims are brought directly against a municipality.

To state a *Monell* claim, the plaintiff must plead two elements: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Saltz v. City of Frederick, MD*, 538 F. Supp. 3d 510, 554 (D. Md. 2021) (citing *Bd. of Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 403 (1997)).  Under the first element, a policy or custom can arise in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'[7]'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citations omitted).  Such a policy or custom will "not, however, 'be inferred merely from municipal inaction in the face of isolated

[7] Plaintiff does not specify which of the four potential customs are at issue here.  Rather, Plaintiff alleges in a conclusory fashion that "[t]he failure to properly train, supervise, and discipline Abreu demonstrates gross disregard for the constitutional rights of the public, including Plaintiff, and was a proximate cause of Plaintiff's injuries." (ECF No. 1 at 12).

constitutional deprivations by municipal employees.'" *Id.* (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984)). Rather, municipal liability attaches "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.[8]" *Monell*, 436 U.S. at 694. Thus, a *Monell* claim survives the motion to dismiss stage if the plaintiff alleges facts to support that the defendant "was aware of ongoing constitutional violations" and "did nothing to stop or correct those actions." *Smith v. Aita*, No. CV CCB-14-3487, 2016 WL 3693713, at *4 (D. Md. July 12, 2016), *aff'd*, 711 F. App'x 163 (4th Cir. 2018); *see Garcia v. Montgomery Cnty., Md.*, No. CIV. JFM-12-3592, 2013 WL 4539394, at *5 (D. Md. Aug. 23, 2013) (denying a motion to dismiss where the plaintiff alleged that the defendant municipality "was aware of the ongoing constitutional violations by [ ] officers and that the county's failure to supervise and discipline its officers allowed a pattern and/or practice of unconstitutional actions to develop").

Here, Plaintiff alleges a *Monell* claim on the basis that the County did not "properly train, supervise, and discipline Defendant Abreu against abusing his power as a law enforcement officer." (ECF No. 1 at 12). Plaintiff alleges that Sheriff Lewis, Defendant Abreu's supervisor, knew that Defendant Abreu engaged in misconduct and failed to correct him to such an extent that he would not continue to offend while on solo patrol. *See id.* Plaintiff alleges that Lewis "was Abreu's supervisor and the official with final decision-making authority regarding disciplining deputy sheriffs, like Abreu, for such conduct." *Id.* Plaintiff asserts he should have "suspended or fired Abreu, required that Abreu undergo training about his illegal and unethical

---

[8] Similarly, "the Maryland Constitution recognizes a 'pattern or practice' claim as part of its protections of citizens against unconstitutional actions of local government and its employees." *Longtin*, 419 Md. at 500. Thus, a *Longtin* claim is "[t]he state analogue to a *Monell* claim." *Palma v. Montgomery Cnty., Maryland*, 598 F. Supp. 3d 288, 297 n.5 (D. Md. 2022); *see Devi v. Prince George's Cnty.*, No. CV DKC 16-3790, 2017 WL 3592452, at *4 (D. Md. Aug. 21, 2017) ("Maryland, like the federal government, imposes liability on municipalities for widespread patterns or practices that cause constitutional injuries." (citations omitted)).

conduct to ensure that Abreu did not deprive members of the public of their rights secured by the United States Constitution and laws, or required that Abreu have a supervisor accompany him on patrol," for his conduct during training. *Id.* at 13. Therefore, Plaintiff alleges his deliberate indifference to Defendant Abreu constituted a policy, custom, or practice on the part of the County that in turn caused Plaintiff's injuries. *See id.* Specifically, Plaintiff alleges,

> Even in his short time as a Wicomico County Deputy Sheriff, Abreu's misconduct was so frequent and egregious that Sheriff Lewis' failure to take corrective action effectively adopted Abreu's conduct as a custom or practice of Wicomico County, this custom/practice was the driving force behind Abreu's violations of Plaintiff's constitutional rights, including her right to be free from unreasonable seizures and her Due Process right to be free from intrusions on her bodily integrity and freedom of movement.
>
> *Id.*

Briefing reveals that from those allegations, Plaintiff seeks to assert three possible variations of a *Monell* claim: (1) failure to train; (2) failure to supervise or discipline; and (3) condonation. *See Spell*, 824 F.2d at 1388-1392. As an initial matter, it cannot be said that the Complaint alleges any *County* policy that itself was unconstitutional. Based on the analysis above, the conduct of the two sheriffs involved bear not on the County's policies, but rather on the entity by which they were employed, the State of Maryland. *See supra* Section III.A.; *Ledergerber v. Blubaugh*, CIVIL NO. JKB-20-1208, 2020 WL 7029868, *4 (D. Md. Nov. 30, 2020) ("federal courts analyzing federal law claims against Maryland sheriffs [generally] follow [Maryland precedent] in holding that the sheriff acts as a state official when exercising law enforcement functions."). Moreover, this Court has previously concluded in one instance that "Baltimore police officers are state employees free from the City's supervision and control," and, therefore, the City "cannot be liable" for Baltimore police officers' conduct under § 1983. *Estate of Anderson v.* Strohman, 6 F. Supp. 3d 639, 646 (D. Md. 2014); *Harrod v. Mayor & City*

*Council Balt. City*, No. GLR-18-2542, 2019 WL 5636392, at *2-3 (D. Md. July 24, 2019); *Whetstone v. Mayor & City Council of Balt.*, No. ELH-18-738, 2019 WL 1200555, at *12-13 (D. Md. Mar. 13, 2019); *Burgess v. Baltimore Police Dep't*, Civil Action No. RDB-15-0834, 2016 WL 795975, at *5-6 (D. Md. Mar. 1, 2016); *Dale v. Mayor & City Council of Balt. City*, Civ. A. No. WDQ-14-2152, 2015 WL 5521815, at *3-4 (D. Md. Sept. 15, 2015); *Holloman v. Rawlings-Blake*, Civ. A. No. CCB-14-1516, 2014 WL 7146974, at *4 (D. Md. Dec. 12, 2014). Assuming, *arguendo,* that such an issue is not preclusive of any *Monell* claim against a county,[9] Plaintiff's *Monell* claim fails notwithstanding the reasoning as set forth above.

      1.    <u>Plaintiff Fails to Plead a Cognizable Failure to Train Claim</u>

"A municipality can also be liable for an established policy through a failure to train, if it reflects a deliberate or conscious choice to not do so." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 309 (D. Md. 2020) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "'Deliberate indifference' is a stringent standard, which is only met if Plaintiff pleads facts such that the Court may draw a reasonable inference that (1) the County has actual or constructive notice of a deficiency in its training program that causes its employees to violate citizens' constitutional rights and (2) that despite this knowledge, it has chosen to retain that system." *McDonnell v. Hewitt-Angleberger*, No. WMN-11-3284, 2012 WL 1378636, at *4 (D. Md. Apr. 19, 2012) (citations omitted). "Training policy deficiencies can include (1) 'express authorizations of unconstitutional conduct,' (2) 'tacit authorizations' of such unconstitutional conduct, and (3) failures to adequately 'prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.'" *Id.* (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). "Conclusory or broad-sweeping allegations of deficient officer training that was

---

[9] Plaintiff pleads that Sheriff Lewis has final decision-making authority with respect to disciplining Deputy Sheriffs in Wicomico County. For the sake of completeness, the Court will consider the substance of Plaintiff's claims.

a deliberate or conscious choice by the municipality and which resulted in unconstitutional officer conduct are insufficient to state a claim." *Doe v. Anne Arundel Cnty.*, Civil No.: 1:23-cv-03451-JRR, 2025 WL 675059, at *13 (D. Md. Mar. 3, 2025) (citing *Corbitt v. Baltimore City Police Dep't*, No. CV RDB-20-3431, 2022 WL 846209, at *8 (D. Md. Mar. 22, 2022); *Jones v. Chapman*, No. CIV.A. ELH-14-2627, 2015 WL 4509871, at *18–20 (D. Md. July 24, 2015)).

Notably, even if "a particular officer may be unsatisfactorily trained," that "will not alone suffice to fasten liability on the [county], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Canton*, 489 U.S. at 390-91. The *Canton* Court reasoned,

> Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 389.

In *Peters v. City of Mount Rainier*, the plaintiff filed a failure to train claim against the police force for multiple brutalities. *See Peters v. City of Mount Rainier*, GJH-14-00955, 2014 WL 4855032, at *5 (D. Md. Sept. 29, 2014). There, this Court considered the lack of allegations concerning the "'nature of the training'" or "'that the officer's conduct resulted from said training.'" *Id.* at *5 (quoting *Lewis v. Simms*, Civil Action No. AW–11–cv–2172, 2012 WL 254024, at *1 (D. Md. Jan. 26, 2012)).

Here, as Defendant argues, the Complaint lacks the allegations necessary to survive a motion to dismiss. Construing the allegations in the light most favorable to Plaintiff, the Complaint does not support an inference that (1) the lack of any training Defendant Abreu

received was caused by a widespread pattern of unconstitutional conduct such that the County would have notice of a deficient training program or (2) was a deliberate or conscious choice on the part of the County, or (3) that any such training deficiency caused Defendant Abreu to engage in sexual assault. *Id*; *Doe*, 2025 WL 675059, at *13; *McDowell v. Grimes*, Civil Action No. GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018) (concluding that three incidents of alleged police brutality over a period of two and a half years insufficient). While the Complaint pleads that Defendant Abreu was not disciplined to a sufficient extent by his supervisory sheriff for three specific instances, these allegations are not enough to meet the high bar for failure to train *Monell* claims. *McDowell*, 2018 WL 3756727, at *4. Like in *Peters*, there are no allegations supporting an inference that Sheriff Lewis's failure to train Defendant Abreu differently caused him to sexually assault Plaintiff. *Peters*, 2014 WL 4855032, at *5. At most, the allegations support an inference that in three incidents, one specific sheriff did not take the action he should have.[10] (ECF No. 1). While the alleged conduct is undoubtedly unacceptable, the Complaint fails to plead facts supporting a plausible *Monell* claim under the high bar for failure to train. *Peters*, 2014 WL 4855032, at *5; *McDowell*, 2018 WL 3756727, at *4; *Doe*, 2025 WL 675059, at *13.

2.    Plaintiff Fails to Plead a Cognizable Failure to Supervise Claim

To state a failure to supervise and discipline claim, a plaintiff must allege "(1) that the supervisor had 'actual or constructive knowledge' that a subordinate was engaged in conduct that 'posed a pervasive and unreasonable risk of constitutional injury'; (2) that the supervisor's response to that knowledge 'was so inadequate as to show deliberate indifference to or tacit

---

[10] As Defendant points out, the Complaint alleges that Defendant Abreu received further training for the first incident, the Sheriff reviewed the second incident and Abreu received the discipline deemed necessary, and Abreu was disciplined for the third incident. (ECF No. 37 at 10). Moreover, the Complaint alleges that sixty (60) days after Defendant Abreu began patrolling solo, the Sheriff's office arrested, charged, and terminated him.

authorization of the alleged offensive practices'; and (3) an 'affirmative causal link' between the supervisor's inaction and the plaintiff's alleged constitutional injury." *Cottman v. Balt. Police Dep't*, No. 21-CV-00837-SAG, 2022 WL 137735, at \*9– 10 (D. Md. Jan. 13, 2022) (quoting *Brown v. Bratton*, No. ELH-19-1450, 2020 WL 886142, at \*34 (D. Md. Feb. 21, 2020)). Thus, a plaintiff who fails "to allege widespread conduct by County employees that could support the inference that County policymakers were aware of and tacitly condoned" an unconstitutional violation by failing to supervise or discipline their employees is insufficient to "nudge [a] *Monell* claim 'across the line from conceivable to plausible.'" *Brown*, 2020 WL 886142, at \*35.

The similar fatality of Plaintiff's failure to supervise claim is the lack of support for an inference that Sheriff Lewis—or a *County* policy maker—had actual or constructive knowledge of widespread instances of a practice of officers to commit the acts Plaintiff alleges Defendant Abreu committed. *Id.* Without such allegations, there can be no inference that the County acted with the necessary tacit authorization or deliberate indifference of sheriffs committing sexual assaults in the County. The allegations do not give rise to an inference that multiple supervisory Sheriffs knew about and ignored Defendant Abreu's conduct in support of a widespread practice in the county in failing to supervise and discipline deputies to prevent them from committing sexual assaults in the County. At most, the allegations concerning Defendant Abreu's conduct over a period of sixty-days on solo patrol support an inference that he was an unacceptable outlier who the State later charged and prosecuted. (ECF No. 1 at 12). Therefore, Plaintiff's failure to supervise and discipline claim must be dismissed. *Brown*, 2020 WL 886142, at \*35.

3.    Plaintiff Fails to Plead Facts that Support a Cognizable Condonation Claim

To state a custom by condonation claim, "'[a] plaintiff must point to a persistent and widespread practice[ ] of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference.'" *Doe*, 2025 WL 675059, *9-*10 (D. Md. Mar. 3, 2025) (quoting *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 402 (4th Cir. 2014)). Allegations of sporadic or isolated violations of rights are insufficient. *Id.*

Plaintiff relies on *Johnson v. Baltimore Police Department* and *Garcia v. Montgomery County* in support of the argument that she has stated a *Monell* claim under a theory of condonation. (ECF No. 24 at 14). However, both cases are readily distinguishable. First, in *Johnson*, this Court noted that merely alleging that a municipality condoned an unconstitutional policy does not give rise to a *Monell* claim. *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 310-311 (D. Md. Apr. 7, 2020). "This causal link is satisfied 'if occurrence of the specific violation [alleged] was made reasonably probable by permitted continuation of the custom,' such that the specific violation was 'almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Id.* (quoting *Spell*, 824 F.2d at 1391). There, the Court concluded that a condonation claim could survive the motion to dismiss stage when the Baltimore Police Department "was aware of [] ongoing violations" and a pattern developed "throughout the [early] 2000s and into 2010." *Id.* Such conduct, which spanned over the course of a decade, included "illegal stops without probable cause or reasonable suspicion, illegal pursuits and arrests, and falsification of evidence by plainclothes officers regularly employed within the BPD." *Id.* at 290. The allegations continued,

> The pattern of unconstitutional practices began, according to Plaintiffs, when the BPD first utilized "elite units comprised of plainclothes officers," including "flex squads" and "Special Enforcement Teams" ("SETs"), who had "wide latitude to investigate and arrest persons suspected of dealing drugs and/or gun

> violations." *Id.* ¶ 77. These officers, who drove unmarked cars, were often
> referred to as "knockers" or "jump out boys," because of their tendency to drive
> up to citizens, jump out of their cars, chase citizens, and conduct "aggressive
> illegal searches" of them. *Id.* ¶ 79. Plaintiffs recount a number of instances,
> leading up to 2010, in which BPD officers in units like VCIS raped, robbed, and
> even killed Baltimore residents while on duty.

*Id.* It therefore cannot be said that this scenario, which involved three instances of one sheriff's inadequate response to another sheriff's misconduct during training is analogous to a ten-year period of many abuses on the part of many officers. Against this backdrop, it further cannot be said that the events pled show that Sheriff Lewis's failure to impose greater disciplinary action constituted a custom of the County such that Defendant Abreu's sexual assaults were "almost bound to happen." *See id.* at 311.

Similarly, in *Garcia*, the plaintiff brought a *Monell* claim on the basis that contrary to a written media relations policy which provides police should remain cooperative with the media, the police had a custom and practice among officers to obstruct or prevent the media from filming police activity conducted in the public. *Garcia*, 2013 WL 4539394, at *5. There, the complaint alleged that the county was aware of unconstitutional acts by many officers directed toward many members of the media and nevertheless ignored it. *See id.* By contrast, the Complaint here involves one state employee, Defendant Abreu, and three instances of conduct his supervisor, another state employee, observed. While Plaintiff is correct that the Complaint need not plead the multiple incidents of constitutional violations that may be necessary at later stages, it cannot be said that the many pleaded instances of violations on behalf of many officers in *Garcia* instructs on three isolated incidents in which one supervisory sheriff failed to respond more vigorously to misconduct during training. *See id.*

In the Court's view, this case is much more like *Doe v. Anne Arundel County*, in which this Court dismissed a condonation *Monell* claim against a county arising from the alleged sexual

19

assault that occurred over the course of two months and involved two particular officers. *Doe*, 2025 WL 675059, at *11. There, the Court reasoned that while the officers' conduct would be fairly considered persistent with respect to the plaintiff, the allegations were "insufficient to support that the constitutional violation at issue—sexual assault at the [] mental health unit—was a persistent and widespread practice of significant duration such that policymakers had actual or constructive knowledge thereof." *Id.*

Similarly, the Complaint here alleges that during Defendant Abreu's training, Defendant Abreu and Sheriff Lewis committed wrongdoing: Defendant Abreu for sexual misconduct, and Sheriff Lewis for failing to respond to misconduct with greater vigor. (ECF No. 1 at 12). Under *Doe*, the allegations concerning one state sheriff's sexual misconduct, and the other's failure to provide better discipline, are insufficient to support an inference that the purported violation, here failing to prevent sexual misconduct, was a widespread practice of a significant duration such that County policymakers had actual or construction knowledge thereof, which in turn caused the abuses inflicted upon Plaintiff. *Id.* Therefore, Plaintiff fails to allege a Condonation claim. *Doe*, 2025 WL 675059, at *11.

Therefore, Counts V and VI must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, it is this 11th day of February, 2026, hereby **ORDERED** that Defendant's Motion to Dismiss, or in the Alternative, to Bifurcate, construed as a Motion to Dismiss is GRANTED without prejudice and with leave to amend. Should Plaintiff wish to file an Amended Complaint, she shall do so within twenty-eight (28) days of the date of this Memorandum Opinion and Order, at which time Defendants shall file an answer or other

responsive pleading, including another motion to dismiss if appropriate, within twenty-one (21) days therefrom.

Dated: February 11, 2026                         _____/s/_____

                                                 J. Mark Coulson
                                                 United States Magistrate Judge